UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHARLES J. SALERNO,

           Plaintiff,           CIV. S-04-2312 PAN

      v.

JO ANNE B. BARNHART,           Memorandum of Decision
Commissioner of Social
Security,

           Defendants.

-o0o-

     Pursuant to 42 U.S.C. § 405(g) plaintiff seeks review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.

     Both parties moved for judgment on the record.

     The social security disability insurance program established by Title II of the Social Security Act pays cash benefits to disabled persons who have contributed to the program

and retain "insured" status.  42 U.S.C. §§ 423(a)(1)(d), 416(i)(2)(C), 416(i)(3).

To qualify, a claimant must establish inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner makes this assessment by a five-step analysis.  First, the claimant must not currently be working.  20 C.F.R. § 404.1520(b).  Second, the claimant must have a "severe" impairment.  20 C.F.R. § 404.1520(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded.  20 C.F.R. § 404.1520(d).  Fourth, if the claimant can do his past work benefits are denied.  20 C.F.R. § 404.1520(e).  Fifth, if the claimant cannot do his past work and, considering the claimant's age, education, work experience, and residual functional capacity, cannot do other work that exists in the national economy, benefits are awarded.  20 C.F.R. § 404.1520(f).  The last two steps of the analysis are required by statute.  42 U.S.C. § 423(d)(2)(A).

Plaintiff applied for benefits in April 1997 at age 58 years, claiming disability since February 28, 1996[1], due to "eye strain, lower back pain, pain in joints and legs, varicose veins, fingers lock-up, shortness of breath, short term memory loss, ringing in ears, depression, trouble sleeping, ingestion [sic], diarrhea." Tr. 86,96.

Plaintiff's claim was denied initially and upon reconsideration by the Social Security Administration. An unfavorable decision was made October 26, 1998, which plaintiff appealed. On July 12, 2002, pursuant to a stipulated remand from the United States Court of Appeals for the Ninth Circuit, the Appeals Council vacated the October 1998 decision and remanded the case for a new hearing and decision. The Appeals Council specifically ordered on remand: (1) "further consideration of the issue of claimant's disability status prior to December 31, 2001, his date last insured for Title II disability benefits; (2) further evaluation of claimant's maximum residual functional capacity, with specific reference to evidence of record in support of assessed limitations; (3) further consideration of all the evidence of record, including evidence regarding claimant's eye impairments, prosthetic left eye and monocular vision in the right eye; and (4) clarification of inconsistences in the vacated decision regarding claimant's ability to stand and walk." Tr.

---

[1] Plaintiff's application for disability insurance benefits lists an onset date of February 28, 1996 (Tr. 86), but his disability report states he became disabled on February 1, 1997. Tr. 96. The ALJ opinion of 2004 lists February 28, 1996 as the onset date.

239.

The Appeals Council also ordered additional evidence be requested from the treating sources, including medical source statements as to what plaintiff can do despite his limitations. Tr. 239. Plaintiff's attorney did not send the copying fee requested by plaintiff's treating physician and therefore did not receive any additional evidence. Tr. 239. Further, the record shows that claimant discussed the medical source statement with his treating physician but requested that the physician not complete the form. Tr. 239-40, 394. Finally, as ordered by the Appeals Council, medical experts and a vocational expert were obtained.

In July 2004, after a hearing in December 2003, an administrative law judge found that: plaintiff is insured through December 31, 2001; plaintiff has not engaged in substantial gainful activity since his alleged onset date; plaintiff has the severe impairment of arthritis, in addition to depression, a left eye prosthesis, monocular vision in his right eye, an alleged hand impairment; plaintiff's impairments do not meet or equal an impairment in the Listing of Impairments at 20 C.F.R. Part 404, Supart P, Appendix 1; plaintiff's testimony is not fully credible; plaintiff has the residual functional capacity for light work that does not require sitting for more than four to six hours in an eight-hour work day, standing for more than six hours, or any repetitive bending, squatting, twisting, or kneeling, or more than frequent reaching, handling or fingering;

plaintiff is unable to perform his past relevant work; plaintiff is of advanced age, with a limited education and a history of skilled and semi-skilled work; plaintiff has the following skills acquired in his past relevant work: forklift driving, written/math semi-skills, material moving, stock checking, customer service, and scheduling; and, that there are jobs existing in the significant numbers that plaintiff is able to perform using his transferable skills with very little, if any, vocational adjustment and requiring no additional skills.  Tr. 249.

Plaintiff has exhausted his administrative remedies[2] (Tr. 225-32) and again seeks judicial review.

This court must uphold the Commissioner's determination that a plaintiff is not disabled if the Commissioner applied the proper legal standards and if the Commissioner's findings are supported by substantial evidence.  Orteza v. Shalala, 50 F.3d 748 (9th Cir. 1995).  Substantial evidence is more than a mere scintilla but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Id.

---

[2] The notice of appeal provided 60 days to file an appeal from the ALJ's decision.  On August 5, 2004, the Appeals Council notified plaintiff that an incorrect notice was issued with the ALJ's decision and explained the appeal process and deadlines. On August 23, 2004, plaintiff's attorney wrote the Appeal's Council, requesting remand for a new hearing. On September 3, 2004, plaintiff wrote the Appeals Council, objecting to the ALJ's July 2004 decision. It appears that the Appeals Council never responded to plaintiff's objections.  However, both parties both agree that plaintiff has exhausted his administrative remedies.

Plaintiff contends that the administrative law judge erred by: (1) rejecting examining physician Dr. Kako's opinion when he had accepted it in the previous decision; (2) failing to provide "good reasons" for rejecting the opinion of treating physician Dr. Gilbert; (3) misstating the vocational expert's testimony that plaintiff had transferrable skills; (4) concluding that plaintiff's impairments, alone or in combination, do not meet or equal a listed impairment; (5) finding that plaintiff's depression was not severe; and, (6) failing to provide a basis for his assessment of plaintiff's residual functional capacity.

Plaintiff testified that he was born November 26, 1938, and completed school through the tenth grade.  Tr. 260.  He testified that he worked at the poultry warehouse since 1959 until the company went of out of business and he was laid off. Tr. 262, 265.  At the first hearing in 1997, plaintiff testified that it was a coincidence that the day he got laid off, he had a doctor's appointment for his back, and soon thereafter began receiving state disability benefits.  Tr. 33, 34.  Plaintiff explained that his job consisted of "warehousing, receiving, putting up orders, taking care of customers, the will-call customers. Using electric dollies . . . limited forklift . . . and a lot of heavy lifting."  Tr. 263.  He testified that after the company went out of business, he tried to work from home doing woodwork that he would sell.  Tr. 265.  Plaintiff testified that the woodworking was difficult physically, mostly because his back hurt, and that he never made a profit from it.  Tr. 266.

With regard to his orthopedic limitations experienced while working at a poultry warehouse, plaintiff testified that the pain he had in his back was "close to a 10" on a scale of 1 to 10, and that he would "push himself to get through the day." Tr. 270.  Plaintiff testified that when he stopped working the pain level was closer to a "3 or 4" and would be aggravated when he lifted something heavy or made an awkward move.  Tr. 271.  He testified that it would take one to two weeks to recover from such aggravation during which time he would lay in bed all day.  Tr. 273.  With regard to his hands, plaintiff testified that while he was working at the poultry warehouse, his fingers would occasionally "lock up."  Tr. 280.  He testified that after he quit working, his hands continued to lock up two to three times a week.  Tr. 281.  Plaintiff's attorney stipulated that the fingers "locking up" is not a severe impairment.  Tr. 284.  Plaintiff did however, complain that his hands often swelled and caused him pain.  Tr. 284.  Plaintiff testified that he was unable to take pain medication because it upsets his stomach due to an ulcer operation he had in 1974.  Tr. 295.  Plaintiff testified he takes Effexor and Prozac for depression.  Tr. 297.

First, plaintiff argues that the administrative law judge improperly rejected the opinion of Dr. Rongy Kako, M.D.  Dr. Kako examined plaintiff on May 10, 1997, and opined that he could do 4-6 hours of work in an 8-hour day.  Tr. 155-57.  Plaintiff argues that the ALJ accepted Dr. Kako's limitation to part-time work in his 1998 decision, but rejected it in the 2004 decision.

This is not an accurate characterization of the ALJ's findings concerning Dr. Kako's opinion.

> In 1998, the ALJ found that plaintiff had the RFC for:
>
> a range of sedentary and light work with no repetitive bending, squatting, twisting, or kneeling.  Claimant is able to sit for four to six hours in an eight-hour work day, and is able to stand and walk for six hours. This RFC is based on claimant's testimony that he is able to perform a range of daily activities without limitations, as well as the fact that claimant performed work at the heavy exertional level until his alleged disability onset, and there is no medical evidence that his physical condition has changed substantially since then.  Giving the plaintiff the benefit of the doubt that his back and hand pain limit his ability to perform heavy or medium work, I find that he can do sedentary and light work.  This RFC is consistent with that of the consultative examiner who opined that, taking into account claimant's "purely subjective" complaints of pain, claimant could perform four to six hours of work, with no postural limitations.  As discussed below, I do not credit claimant's subjective complaints of pain, and find that claimant has the RFC for sedentary and light work. Tr. 20.

Far from adopting Dr. Kako's limitation to part-time work, the ALJ described Dr. Kako's opinion as based on plaintiff's "purely subjective complaints," which the ALJ then discredited.  The ALJ merely noted that, even based on plaintiff's subjective complaints, Dr. Kako thought plaintiff could perform four to six hours of work each day.  The ALJ then discredited plaintiff's subjective complaints and found plaintiff capable of working for a full eight hour day if the work was light and sedentary.

////

This is consistent with the ALJ's decision in 2004, wherein he again remarked that Dr. Kako's opinion is based purely on plaintiff's subjective complaints. Specifically, the ALJ wrote:

> Also not fully discussed in the prior decision is a report from a consultative examiner, Rony Kako, M.D., who performed a physical examination in connection with claimant's Social Security application on May 10, 1997. Exhibit 3F; TR 155-157. The examination is noteworthy for having no medical records to review, relying solely on "history . . . obtained from the patient" and providing a functional capacity assessment "based on today's examination and the patient's history, and purely on his subjective complaints . . . ." [emphasis added]. Exhibit 3F/1 and 3; TR 155 and 157.
>
> The examination states that claimant is most limited by a "sore back" which he hurt 10 years ago and now "hurts all the time." According to claimant, he can sit ½ hour, stand ½ hour and walk 1-2 blocks. Claimant complains of pain that is "constant, sharp, dull and aching in nature." The consultative examiner found a full range of motion of the neck, back, shoulders, elbows, wrists, hips, knees and ankles. He found mild tenderness to palpitation at the L2-L5 spine levels with no radicular symptoms. The examiner found claimant not able to flex the left third finger completely but he retained normal bilateral grip strength. Claimant's motor and sensory examinations were normal as were reflexes, coordination and gait. Exhibit 3F; Tr. 155-157.
>
> Notwithstanding a normal examination, Dr. Kako concluded that claimant "can kneel, crouch, crawl, bend, lift and carry 15 pounds on a frequent basis," i.e., up to 2/3 a workday. The doctor added, "He should be able to perform 4-6 hours of work in an 8-hour workday with usual and customary breaks." Exhibit 3F/3; TR 157. There is no support whatsoever based on the doctor's own examination results for limiting claimant to part-time work. He had no records to review and candidly stated he relied purely on claimant's subjective complaints, which do not constitute a

>valid, reliable or probative basis for adopting the examiner's assessment. I find the doctor's limitation to part-time work to also be unsupported by his own examination and inconsistent with the record as a whole, including claimant's testimony.  There is no reliable basis in the examiner's report for a more restrictive RFC than that discussed above. Tr. 244.

Furthermore, there were specific, legitimate reasons supported by substantial evidence in the record for rejecting Dr. Kako's opinion.  See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of Dr. Calvin R. Nash, M.D., an orthopedic surgeon, contradicted Dr. Kako's opinion.  Dr. Nash found plaintiff capable of light work with no part-time limitation. Dr. Nash made this assessment after examining plaintiff in June 2003.  The ALJ articulated a host of specific and legitimate reasons for not accepting the limitation to part-time work, in particular, the fact that such limitation was based purely on plaintiff's incredible subjective complaints.  Accordingly, the ALJ did not err in rejecting Dr. Kako's opinion that plaintiff be limited to part-time work.

Next, although it is not entirely clear, plaintiff appears to argue that the ALJ erred by failing to provide good reasons for rejecting the opinion of plaintiff's treating physician, Dr. Larry L. Gilbert, M.D., as expressed in Dr. Gilbert's October 2, 1998, report.  That report states:

>he [plaintiff] has had very significant subjective complaints over the last several years which have become worse as time passes.  He has problems with

> pain in his neck and back and pain and stiffness in his hands. He has had problems with mobility of his middle finger . . . . Presently he has been unable to perform any useful work because of the difficulty with his generalized musculoskeletal pain and, in particular, his hands. Objective evidence for this are noted on x-rays done on 9/8/98. This includes a lumbosacral spine x-ray that shows degenerative osteoarthritis of both <u>wrists</u>, the right wrist being worse than the left. It should be noted also that he had cervical spine x-rays on 7/19/85 that showed minimal degenerative changes at that time. Tr. 221 (Emphasis added).

The ALJ noted, however, that a year before, on October 15, 1997, Dr. Gilbert found in his Residual Functional Capacity assessment, that plaintiff can "lift up to 10 pounds frequently and 20 pounds occasionally, carry up to five pounds frequently and 20 pounds occasionally and bend, climb and reach occasionally." Tr. 242, 187-88. Dr. Gilbert also found plaintiff capable of using his hands for repetitive grasping, pushing, pulling and fine manipulations. Tr. 242, 187-88.

As he did in his 1998 decision, the ALJ again found Dr. Gilbert's opinion "not entitled to great weight." The ALJ noted that on November 19, 1996, plaintiff presented to Dr. Gilbert, whose notes indicate "Charles has no major problems." Tr. 242, 180. Further, those notes state that plaintiff "is doing reasonably well with the depression and he is starting to do some work in the garage with making things for sale over the holidays." Tr. 180. A review of his systems was "unremarkable" and Dr. Gilbert noted that he has not had "any [medical] problems recently at all." Tr. 180. Significantly, these notes post-date plaintiff's alleged onset date of February 28, 1996. Tr. 86.

Further, the ALJ noted that in February 7, 1997, claimant sought treatment for back pain, which developed after plaintiff did a roofing project.  Tr. 242.  Dr. Gilbert recommended exercises and wrote, "I do not think that anything else needs to be done."  Tr. 242, 179.  The ALJ noted that on March 13, 1997, Dr. Gilbert vaguely found that plaintiff was having "more and more problems" and that permanent disability "is probably a reasonable thing to consider."  Tr. 242, 179.  Next, the ALJ notes that Dr. Gilbert treated plaintiff primarily for high cholesterol, although plaintiff had another "flare up" in January 1998 afer carrying a couch and doing "some pushing and pulling in the garage."  Tr. 218, 242.  At that visit, Dr. Gilbert advised plaintiff "there is no specific testing that would help" and that he "should develop and maintain a walking program and avoid doing the activities that seem to flare it up."  Tr. 218.

Furthermore, on May 9, 1997, plaintiff presented to Dr. Gilbert for follow-up on a lacerated thumb and for high cholesterol; he reported "feeling okay."  Tr. 219.  Plaintiff saw Dr. Gilbert on August 8, 1997, but the treatment notes mention only plaintiff's cholesterol level and thumb.  Tr. 219.

Then, as the ALJ notes, seemingly out of the blue in September 1997, Dr. Gilbert wrote a letter "to whom it may concern" that plaintiff has chronic low back pain and has "significant disability with pain and stiffness of his hands," and that "he is not able to return to his customary work activities and on a permanent basis will not be able to do any

heavy lifting or repetitive bending or squatting . . . . He is permanent and stationery with this condition." Tr. 186.

Following this letter is Dr. Gilbert's October 15, 1997, residual functional capacity assessment as discussed above, then the letter of October 2, 1998, also discussed above.

As a general rule, more weight is given to a treating physician's opinion because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). However, where the opinion of a treating physician is contradicted by a nontreating physician's opinion, the latter may constitute substantial evidence if it rests on independent clinical findings. Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989). "Where, on the other hand, a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)(citations omitted).

However, "[a] statement by any physician that the claimant is disabled or unable to work is a conclusion on the ultimate issue to be decided . . . and is not binding on the [ALJ] in reaching his determination as to whether the claimant is disabled within the meaning of the [Act]." Murray v. Heckler,

722 F.2d 499 (9th Cir. 1983)(citing Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988); 20 C.F.R. §§ 404.1527 and 404.927).  It is well established that "the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." <u>Young v. Heckler</u>, 803 F.2d 963, 968 (9th Cir. 1986).  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ relied on the opinion of examining physician Dr. Calvin R. Nash, an orthopedic surgeon, who found plaintiff had "degenerative arthritis not inconsistent with his age" and "good functioning joints."  Tr. 245, 387.  He found plaintiff had a limited range of motion of the right wrist but that he could do light duty work.  Tr. 245, 387.  This opinion contradicts Dr. Gilbert's contradictory, inconsistent, and conclusionary opinions as to plaintiff's status as "disabled."

The ALJ did not err in relying on Dr. Nash's opinion rather than on Dr. Gilbert's contradictory opinions, which evidence little objectively wrong with plaintiff and appear to be aimed at getting benefits for plaintiff rather than treating him for a "disabling" condition.

(Apparently, when Dr. Gilbert retired, Dr. Turnune undertook to act as plaintiff's treating physician.  Ex. F-19.  It was Dr. Turnune's records and opinion that plaintiff declined to provide on remand.  The obvious inference is that the opinion of the physician who was treating plaintiff at the most relevant time did not support plaintiff's claims and plaintiff suppressed

it.)

Next, plaintiff argues that the ALJ "misstated" the vocational expert's testimony that plaintiff had transferrable skills.

Agency regulations consider "advanced age" (age fifty-five or older) as "the point where age significantly affects a person's ability to do substantial gainful activity." Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990) (citing 20 C.F.R. § 404.1563(d)).  For claimants of advanced age to be not disabled, they must have acquired skills from their past work that are transferable to skilled or semiskilled work.  See id. "The ALJ must either make a finding of 'very little vocational adjustment' or otherwise acknowledge that a more stringent test is being applied which takes into consideration [claimant's] age."  Renner v. Heckler, 786 F.2d 1421, 1423 (9th Cir. 1986) (per curiam) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.00(f)).

Here, the ALJ made the finding of "very little vocational adjustment."  Tr. 248.  More specifically, the ALJ cited the vocational expert's testimony that plaintiff had acquired the following skills in his past work: forklift driving, written/math semi-skills, material moving, stock checking, customer service, and scheduling.  Tr. 247-48.  The vocational expert testified that plaintiff could work as a distributing clerk (semi-skilled light work), which would use plaintiff's customer service, material moving and stock checking skills, and would require no

other skills.  Tr. 248, 313-315, 327-330.  The vocational expert also testified that the material handler skills and customer service skills could be transferred to a job of auto self-service attendant.  Tr. 316-17.  The ALJ incorporated the vocational expert's findings about plaintiff's skills applicable to these other jobs in his findings (Tr. 247-49), and then made the requisite finding that plaintiff would need "very little vocational adjustment" to perform these jobs.  Tr. 248.  Accordingly, the ALJ did not err in relying on the vocational expert's testimony to determine plaintiff had acquired transferable skills.

Next, plaintiff argues that the ALJ erred by "failing to adequately explain his evaluation of the combined effects" of plaintiff's impairments.  Specifically, plaintiff argues that the ALJ merely provided a "boilerplate" finding that plaintiff's impairments alone or combination did not meet or equal an impairment in the Listing of Impairments.  Plaintiff does not argue that he meets or equals a particular listing, but takes issue merely with the language the ALJ used in making this determination.

Far from just providing "boilerplate" the ALJ provided in-depth analysis of the medical record relating to all plaintiff's impairments.  Tr. 240-46.  He did not just cite "boilerplate" as plaintiff contends.  Plaintiff's argument is without merit and the ALJ did not err in making the assessment at step-three of the analysis.

Next, plaintiff argues that the ALJ erred in finding that plaintiff's depression was not severe.

The determination whether an impairment or impairments are severe is based on a review of the entire record, as well as an assessment of the claimant's credibility. Smolen v. Chater, 80 F. 3d 1273, 1290 (9th Cir. 1996); see also SSR 96-3p. "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. 416.921(a).

At the hearing, plaintiff testified that "he's been having depression for years." Tr. 276.  He testified that Dr. Turnure treats him for depression (Tr. 276); however, plaintiff's attorney failed to obtain Dr. Turnure's medical records for the ALJ to review and plaintiff requested that such records not be made available.  Tr. 277, 394.  Nonetheless, the ALJ reviewed the evidence available to him.  He noted that Dr. Gilbert treated plaintiff for depression, and noted in October 1996 that the "Effexor has made a great difference in [plaintiff]."  Tr. 181, 246.  Notably, Dr. Gilbert's notes from May 1997, August 1997, November 1997, January 1998, March 1998, May 1998, and June 1998 make no mention of plaintiff's depression.  Tr. 217-19. The record further indicates that a consultative examination by Dr. Hazem Hashem, M.D., in May 1997 revealed that plaintiff took Effexor, which made "things look a little better to him."  Tr. 153.  In addition, plaintiff indicated that he had not had any therapy or particular psychiatric treatment.  Tr. 153.  Dr. Hazem

17

Hashem opined that "patient's depression is well under control with medication." Tr. 154. Finally, at the hearing, plaintiff did not offer any evidence that his depression was in any way debilitating, only that he took medication for it. Tr. 297. Accordingly, the ALJ's finding that plaintiff's depression was not severe is supported by substantial evidence in the record.

Finally, plaintiff argues that the ALJ failed to provide a basis for his assessment of plaintiff's residual functional capacity.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a)(1996); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985). It is an assessment based on all relevant evidence, and may include descriptions of the limitations by the claimant, observations by physicians, and other medical records. Id.

In making his assessment of plaintiff's residual functional capacity, the ALJ considered all such evidence and, contrary to plaintiff's assertion, provided an adequate basis for his finding. In particular, the ALJ wrote:

> Addressing the issues raised by the Appeals Council, I note that in my prior decision I found that claimant has the RFC for a reduced range of sedentary and light work. I found that claimant is able to sit for four to six hours in an eight-hour work day, stand and walk for six hours and cannot perform repetitive bending, squatting, twisting, or kneeling. This is the RFC that was discussed in the body of the prior decision and the RFC propounded to the vocational expert at the hearing. . . . The discrepancy reflected in the findings section of the prior decision was the result of a drafting

error.  As discussed below, I find the RFC set forth above and in the body of the prior decision to accurately describe claimant's work capacity, however, I give claimant the benefit of the doubt and find further that he is unable to perform more than frequent reaching, handling, or fingering due to an alleged hand impairment. Tr. 240-41.

The ALJ went on to explain the basis of his new RFC assessment, discussing evidence provided by ophthalmologist Richard Leiurance, M.D., who testified after an examination that plaintiff has had no difficulty working or driving an automobile throughout his adult life, despite having a left eye prosthesis since the age of sixteen.  Further, the medical expert explained that having monocular vision produces no significant difficulty seeing and that plaintiff's eye impairment is not disabling.  Tr. 241.

Further, the ALJ discussed in detail the medical evidence concerning plaintiff's arthritis (Tr. 241-43), plaintiff's back pain (Tr. 243), his depression (Tr. 246), and his alleged hand impairment (Tr. 246).  The ALJ reviewed and weighed the myriad medical opinions as to plaintiff's conditions and limitations, and ultimately relied on the opinion of Dr. Nash, an examining physician, in determining plaintiff's RFC.  Tr. 245-47. Plaintiff's contention that the ALJ failed to provide a basis for his assessment is wholly without merit upon review of the decision itself and the substantial evidence in the record.

////

////

////

For the foregoing reasons, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.

So ordered.

Dated:  November 30, 2005.

                                      /s/ Peter A. Nowinski
                                      PETER A. NOWINSKI
                                      Magistrate Judge